# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Shane M. Gates** | * | |
| *Complainant* | * | |
| | * | |
| v. | * | **No. 07-CV-06983** |
| | * | |
| **Sheriff Rodney Jack Strain**, in his official | * | |
| and individual capacity; | * | **Civil Action: § 1983** |
| **St Tammany Parish Sheriff's Office**; | * | |
| **D. A. Walter P. Reed**, in his official capacity | * | **Section: K** |
| **St. Tammany District Attorney's Office;** | * | |
| **Attorney Charles M. Hughes, Jr;** | * | **Magistrate: 2** |
| **Sheriff Deputy Nathan Miller;** | * | |
| **Sheriff Deputy Roger Gottardi;** | * | |
| **Sheriff Deputy Brian Williams;** | * | |
| **John Doe Nos.1-5**; | * | |
| **Louisiana Medical Center and Heart** | * | |
| **Hospital, LLC** / and previously as | * | |
| **Louisiana Heart Hospital, LLC**; | | * |
| **Lacombe Nurse Philip Duiett;** | * | |
| **St. Paul Insurance Company;** | * | |
| **ABCs Insurance Companies** | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983, *ET SEQ*., UNDER  45 C.F.R. 164.513 [HIPAA], PENDENT STATE LAW CLAIMS, AND FOR INJUNCTIVE RELIEF TO PREVENT BAD-FAITH PROSECUTION

### PRELIMINARY STATEMENT OF CIVIL RIGHTS VIOLATIONS

On 16 November 2006 St. Tammany Sheriff Deputies pepper sprayed, handcuffed, then beat-up complainant Gates—by repeatedly pounding his face into the asphalt on the Interstate-12 roadway, outside of Lacombe, Louisiana. His treating physicians prognose four corrective surgeries and diagnose permanent nerve damage.

Having beaten up Gates, while his hands were cuffed behind his back, the deputies transported

-1-

Gates to the Louisiana Heart Hospital, where they continued to assault him and with several co-conspirator employees of the Hospital did join to assault and batter him and otherwise violate his federal and state constitutional rights, including his rights under 45 C.F.R. 164.513 [HIPAA].

Having discovered the seriousness of the injuries they had inflicted upon him, the St. Tammany Sheriff's deputies subsequently and repeatedly fabricated and manufactured facts, affidavits, charges, and reports in order to cover up their violations of Gates's constitutional and civil rights.

To shield the deputies from civil rights claims, the St. Tammany Sheriff's Office in concert with the St. Tammany District Attorney's Office did repeatedly, over a period of ten months up until the actual date of trial—revise facts and recharge Gates with criminal offenses, in an attempt to cover up the actions of the deputies, to obstruct Gates's civil rights claims, and to otherwise prevent his redress from the Sheriff's violations of his constitutional rights.

Approximately six months after filing the initial charges, assistant District Attorney Gracianette initiated a demand, stating that the District Attorney would not advance the charges against Gates provided that Gates release the Sheriff and his deputies from liability for their beating and assaulting him. Civil rights counsel for Gates arranged for and met with counsel for the Sheriff, attorney Charles M. Hughes, to discuss the District Attorney's proposal.

On 24 July 2007 counsel met with Sheriff's attorney defendant Charles M. Hughes, Jr., at 1:30 PM, in his office in Covington, Louisiana.  During the discussion of the civil rights issues and the extent of Gates's injuries, Sheriff's attorney Hughes threatened to have the District Attorney file *additional charges of Resisting Arrest* against Gates, in order to obstruct any civil rights claims that

Gates might file, citing *Heck v. Humphrey*[1] and related cases.

Hughes specifically said that he would call or would have the Sheriff call the District Attorney and have those charges filed. At the very least, he called the Assistant District Attorney himself.

Assistant District Attorney Bruce Dearing spoke with Hughes on 17 September 2007, the Friday before the trial date. On the trial date of 20 September 2007, the District Attorney Dearing recharged Gates—ten months after the original charges were filed—with *resisting arrest* charges, the exact charges that had been threatened by defendant attorney Hughes for the express purpose of defeating any civil rights claims Gates might advance.

These actions of the Sheriff and his deputies, the District Attorney and his assistants, the Sheriff's private counsel, and the employees of Louisiana Heart Hospital, have not only violated the constitutional and civil rights of complainant, the actions of the Sheriff and District Attorney also violate their constitutional mandates and restraints as set forth in the Louisiana Constitution and further articulated in *State v. Tate* and its progeny.[2]

Complainant Gates seeks relief and redress from those violations of his constitutional and civil rights, and prays that this Court enjoin and otherwise prevent this bad-faith prosecution.

## JURISDICTION

**Federal Law Claims**

Jurisdiction of this Court arises under 28 U.S.C. secs 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. §§. 1983, 1985, 1986, and 1988; and 18 U.S.C. 1961-1968; 45 C.F.R.164.513 [HIPAA].

---

[1] *Heck v. Humphreys*, 512 U.S. 477

[2] *State v. Tate*. 171 So. 108.

**Injunctive Relief to Prevent Bad-Faith Prosecution**

Jurisdiction for injunctive relief by this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201; 42 U.S.C. §§ 1983, and 1988; and the First, Fourth, Fifth, Eight, and Fourteenth Amendments of the United States Constitution.

This is a civil action to enjoin and redress Gates's deprivation, under color of state law, by local authorities—as such authorities have been defined by the United States 5th Circuit Court of Appeal in *Holly Ray Burns v. Sheriff Jack Strain, et al.* [5th Cir. No. 05-30837], *and Burge v. Parish of St. Tammany,* 187 F.3d 452, citing *Mairena*, 816 F.2d at 1064 and *Hudson*, 174 F.3d 677—the St. Tammany Parish Sheriff's Office and the St. Tammany Parish District Attorney's Office, of his rights, privileges, and immunities under the United States Constitution.

Complainant seeks a temporary restraining order, a preliminary injunction, a permanent injunction, attorney fees, and any other necessary and proper relief. The amount in controversy exceeds that required by law, exclusive of interest and costs.

**Pendent State Law Claims**

Jurisdiction of this Court for pendent claims is authorized by 28 U.S.C. § 1367 with respect to the state law claims, inasmuch as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and under F.R.Civ.P.18(a) and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715.

Pendent claims arise from violation of claimant's right, as set forth in those claims and as the rights violated are expressly guaranteed and protected under the 1974 Louisiana Constitution, particularly Art. 1 § 2 (due process of law), § 3 (right to individual dignity), § 5 (right to privacy), § 19 (right to judicial review), § 20 (right to human treatment), and § 22 (access to courts); and under

-4-

the laws of the State of Louisiana, including but not limited to LSA-R.S. 14:33, *et seq*. (battery), LSA-R.S. 14:36, *et seq*. (assault), LSA-R.S. 14:40, *et seq*. (intimidating by officers), LSA-R.S. 14:44, *et seq*. (kidnapping), LSA-R.S. 14:46 (false imprisonment), LSA-R.S. 14:66 (extortion), LSA-C.C. art. 2315 (liability for acts causing damages), LSA-C.C. art. 2316 (negligence, imprudence or want of skill), LSA-C.C. art. 2317 (acts of others), LSA-C.C. art. 2320 (acts of servants), LSA-C.C. art. 2324 (solidary liability for conspiracy), (abuse of process and negligent misinformation); Malicious prosecution and prosecutorial misconduct are reserved. *See*: *State v. Tate* 171 So. 108, *Monell v. New York City Dept of Social Services,* 436 U.S. 658, *City of Canton v. Harris,* 489 U.S. 387, *McMillian v. Monroe County,* 520 U.S. 781, *Bryan County Comm'r v. Brown,* 520 U.S. 397, *and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.)1999, *Holly Ray Burns v. St. Tammany*, No. 05-30837, U.S. Fifth Circuit Court of Appeals (14 January 2008).

## VENUE

Venue in the United States Courts for the Eastern District of Louisiana is proper under 28 U.S.C. § 1391(b).

## PARTIES

3.     **Complainant Shane M. Gates**, is a person of the age of majority, who was a resident of the City of Covington, Parish of St. Tammany, at all times relevant hereto.

4.     **Defendant Rodney Jack Strain**, is a natural person and the Sheriff for the Parish of St. Tammany, within the State of Louisiana; and who as Sheriff is responsible for the policies, procedures, and practices implemented by the Office of the Sheriff, through its various agencies, agents, departments, and employees, and for injury and violation of United States Constitutional and Louisiana Constitutional rights occasioned thereby. He is the ultimate

supervisor of the deputies of the Sheriff's Department including, but not only the co-defendant deputies Gottardi, Miller, and Williams. Defendant Strain is jointly and *in solido* liable for the activities of his privately retained agents—persons who are not deputized or otherwise public officials, including but not limited to his attorney, co-defendant Charles M. Hughes, Jr.   He is sued in his individual as well as his official capacity.

5. **Defendant St. Tammany Parish Sheriff's Office**, is a local authority within the Parish of St. Tammany, State of Louisiana, and as such does not have Eleventh Amendment immunity under the United States Constitution or the Eleventh Amendment to that Constitution.[3]  The Sheriff's Office is responsible for the policies, procedures, and practices implemented by the Sheriff, though its various agencies, agents, departments, and employees, and for injury and violation of United States Constitutional and Louisiana Constitutional rights occasioned thereby. It is responsible for the actions and omissions of  the deputies of the Sheriff's Department including, but not only the co-defendant deputies Gottardi, Miller, and Williams. The Sheriff's Office is jointly and *in solido* liable for the activities of his privately retained agents—persons who are not deputized or otherwise public officials, including but not limited to his attorney, co-defendant Charles M. Hughes, Jr.

6. **Defendant Walter P. Reed**, is a natural person and the District Attorney for the Parish of St. Tammany, within the State of Louisiana; and who as District Attorney is responsible for the policies, procedures, and practices implemented by the Office of the District Attorney, through its various agencies, agents, departments, and employees, and for injury and violation

---

[3]  United States 5th Circuit Court of Appeal in *Burge v. Parish of St. Tammany,* 187 F.3d 452, citing *Mairena*, 816 F.2d at 1064 and *Hudson*, 174 F.3d 677

of United States Constitutional and Louisiana Constitutional rights occasioned thereby. He is the ultimate supervisor of the attorneys of the District Attorney's Office including, but not only the co-defendants assistant district attorneys named herein.  He is sued in his official capacity.

7.  **Defendant St. Tammany Parish District Attorney's Office**, is a local authority within the Parish of St. Tammany, State of Louisiana, and as such does not have Eleventh Amendment immunity under the United States Constitution or the Eleventh Amendment to that Constitution.[4]

The District Attorney's Office is mandated by the Louisiana Constitution as articulated in *Perez*, 454 So.2d 806 and *Bush I*, 538 So.2d 606, *Bush II*, 541 So.2d 903, and  *State v. Tate* 171 So. 108 and is responsible for the policies, procedures, and practices implemented by the District Attorney, through its various agencies, agents, departments, and employees, and for injury and violation of United States Constitutional and Louisiana Constitutional rights occasioned thereby.

8.  **Defendant Charles M. Hughes, Jr.**, is a natural person who at all times pertinent hereto was/is not a public official, but is the privately retained attorney representing co-defendant Sheriff Rodney Jack Strain and the St. Tammany Sheriff's Office, as such Hughes enjoys neither personal nor official immunity under the United States Constitution nor under the Eleventh Amendment to that Constitution, nor qualified immunity against any pendent State Law Claims—and as such is subject to the Code of Professional Conduct, and not to the

---

[4]   United States 5th Circuit Court of Appeal in *Burge v. Parish of St. Tammany,* 187 F.3d 452, citing *Mairena*, 816 F.2d at 1064 and *Hudson*, 174 F.3d 677

Code of Judicial Conduct, such as are elected officials including the Sheriff and the District Attorney, as set forth in the 1974 Louisiana Constitution and the attendant jurisprudence.

9.  **Defendant Roger Gottardi**, a natural person, who at all times pertinent hereto, was a Sheriff's Deputy in the Office of Rodney Jack Strain, under the employment of the St. Tammany Parish Sheriff's Office.  He is sued in his individual and official capacity.

10. **Defendant Nathan Miller**, a natural person, who at all times pertinent hereto, was a Sheriff's Deputy in the Office of Rodney Jack Strain, under the employment of the St. Tammany Parish Sheriff's Office.  He is sued in his individual and official capacity.

11. **Defendant Bryan Williams**, a natural person, who at all times pertinent hereto, was a Sheriff's Deputy in the Office of Rodney Jack Strain, under the employment of the St. Tammany Parish Sheriff's Office.  He is sued in his individual and official capacity.

12. **Defendant Louisiana Medical Center and Heart Hospital, LLC / and Louisiana Heart Hospital, LLC**, a non-Louisiana LLC, with Louisiana Secretary of State Charter / Organization No. 35038417Q, whose principle place of business in Louisiana is at the offices of C.T. Corporation, 8550 United Plaza Blvd., Baton Rouge, Louisiana 70809 and whose Official Domicile and Principle Office Address is: 10720 Sikes Place, Ste. 300, Charlotte, North Carolina 28277, which defendant operates the Louisiana Heart Hospital in Lacombe, Louisiana, whose employees did conspire with other co-defendants to assault and batter the complainant, and whose employees did violate the provisions of HIPAA and other federal regulations such as to injury complainant by the actions and omissions set forth below.

13. **Defendant Philip Duiett,** a natural person, who at all times pertinent hereto, was a nurse employed by and working at the **co-defendant Louisiana Medical Center and Heart**

-8-

**Hospital, LLC / and Louisiana Heart Hospital**, who individually and in conspiracy with co-defendants Gottardi, Miller and others, did assault and batter defendant, and in conspiracy also did violate federal law including but not limited to the provision of HIPAA, and other federal regulations as set forth herein.   He is sued in his individual capacity and as an employee of the Louisiana Heart Hospital.

14.    **Defendant /John Jane Does Nos. 1 - 5**, natural persons who have not been identified by name, but who did conspire with co-defendants variously, such as to violate his rights under the United States Constitution and the amendments thereto, and his rights under federal laws, including but not limited to violations of 42 U.S.C. § 1983, *et seq*, and 18 U.S.C. 1961-1968; 45 C.F.R.164.513 [HIPAA].

   **Does Nos. 1-5** also did violate his rights under the Louisiana Constitution, particularly Art. 1 §§2 (due process of law), 3 (right to individual dignity), 5 (right to privacy), 19 (right to judicial review), 20 (right to human treatment), and 22 (access to courts); and under the laws of the State of Louisiana, including but not limited to LSA-R.S. 14:33, *et seq*. (battery), LSA-R.S. 14:36, *et seq*. (assault), LSA-R.S. 14:40, *et seq*. (intimidating by officers), LSA-R.S. 14:44, *et seq*. (kidnapping), LSA-R.S. 14:46 (false imprisonment), LSA-R.S. 14:66 (extortion), LSA-C.C. art. 2315 (liability for acts causing damages), LSA-C.C. art. 2316 (negligence, imprudence or want of skill), LSA-C.C. art. 2317 (acts of others), LSA-C.C. art. 2320 (acts of servants), and LSA-C.C. art. 2324 (solidary liability for conspiracy).

15.    **St. Paul Insurance**, is a foreign corporation, licensed to do and doing business in the Parish of St. Tammany, State of Louisiana, which at all times pertinent hereto did provide to defendant the St. Tammany Parish Sheriff's Office, policies of insurance covering its activities

and those of its employees and agents.

16.    **ABC Insurance Companies**, are foreign corporations, licensed to do and doing business in

the Parish of St. Tammany, State of Louisiana, which at all times pertinent hereto did provide

to various co-defendants including but not limited to natural-person co-defendants, but

defendant **Louisiana Medical Center and Heart Hospital, LLC / and Louisiana Heart**

**Hospital**, policies of insurance covering its activities and those of its employees and agents.

When identified, the true names shall be substituted for the place names of ABC Insurance,

*et al.* and the complaint shall be amended pursuant to the Louisiana Direct Action Statute.

## FACTS

17.    On 16 November 2007, complainant Shane Michael Gates bought a car at a dealership in

Slidell, Louisiana.

18.    He left the dealership and took Interstate Highway 12 to return home to Covington,

Louisiana.

19.    On the way home he noticed a police car coming up behind him.

20.    He pulled over to the shoulder of the road and stopped his car.

21.    There was no accident involving the Gates vehicle, the Sheriff's vehicle, or any other vehicle,

at any point prior to, during, or after the stop; however Gates suffered severe and permanent

injuries, all of which were inflicted by the defendant deputies and defendant Nurse

Duiett—who was subsequently fired by the hospital.

22.    Gates got out of his car and was immediately thrown on the hood of the still-running police

car by a person, he later learned, was St. Tammany Sheriff's deputy defendant Nathan Miller.

23.    Defendant Miller held Gates's head, face, and torso on the hot hood of the still-running police

car, causing him to react and pull back from the hood of the car.

24.     Defendant Miller then pepper sprayed Gates.

25.     Defendant Miller subsequently cuffed Gates hands behind his back—having him in custody.

26.     Defendants Roger Gottardi and Brian Williams arrived on the scene.

27.     Defendant Miller—who was not on duty at the time—transferred the custody of Gates

        to defendant Gottardi.

28.     Defendant Gottardi, after taking custody of Gates—who was already handcuffed—again

        forced Gates's head, face and torso unto the hood of his running police car.  Gates pulled

        back to get his face and body off the hood of the car.

29.     Defendant Gottardi then threw Gates onto the asphalt on the roadway of Interstate-12.

30.     Defendant Gottardi then beat the handcuffed Gates, by repeatedly pounding his face into the

        roadway on Interstate-12.

31.     Defendant Gottardi beat Gates until he was unconscious.

32.     Defendant Gates did not regain consciousness until he was in the Emergency Room at the

        Louisiana Heart Hospital—to which he had been taken by the defendant Sheriff deputies.

33.     Defendant Gottardi inflicted multiple injuries on Gates, including—injuries described by ER

        Dr. Bruce Kerry as: *"extensive lacerations* to his eye and *hematomas"*—*"caused by a direct*

        *blow"*—which eye injury alone required 27 stitches, after almost 300 CT Scans were taken.

        Dr. Kerry also recorded that Gates had face and neck injuries, mouth and swelling generally

        [Photographs attached to complaint].

34.     Defendant Gottardi inflicted such injuries to Gates that the Emergency Room physicians at

        Louisiana Heart Hospital would not and did not treat him at that facility.

35. Defendant Gottardi inflicted other physical injuries on Gates as well.

36. Despite the fact that Gates was initially taken to defendant Louisiana Heart Hospital, the physician there refused to treat him.

37. Once at the Emergency Room of the Louisiana Heart Hospital, the deputies Gottardi, Williams, and officers John Does Nos. 1-5 continued to assault him and threaten him while he was in the custody and care of the hospital itself.

38. Defendant Nurse Philip Duiett joined the sheriff deputies in threatening and assaulting Gates while he was in the custody and care of the hospital.

39. Defendant Nurse Duiett in the presence of the deputies and others, accused Gates of multiple crimes and offenses, offenses which could only have been suggested to him by the sheriff's deputies—including driving the wrong way on Interstate-12 and thereby obstructing a highway, and other crimes such as street drug use—none of which were nor are true.

40. Defendant deputies asked Gates for permission to draw blood and take urine samples from him.

41. Gates refused—the notice of that refusal is in the medical and traffic charge records.

42. Defendant Hospital, Nurse Duiett, and deputies asked Gates for permission to treat him and draw blood and take urine for treatment.

43. Gates refused permission.

44. For purposes other than treatment, defendant hospital—and upon information and belief Nurse Duiett himself—took blood samples from Gates.

45. Duiett's taking of blood samples from Gates constitutes a battery, as the hospital and its physicians refused to treat Gates but instead transferred him out of Louisiana for treatment.

-12-

46. As defendant Nurse Duiett and other employees of the hospital took Gates's blood without his express permission—in fact they took his blood against his express refusal— their actions constitute a battery.

47. Defendant Duiett's actions, in conspiracy with the defendant deputies's, constitute assault for the threats and intimidations inflicted upon Gates during his six [6] hours at the Louisiana Heart Hospital.

48. As the treating physicians at Louisiana Heart Hospital refused to treat Gates, but to transfer him to a hospital in Mississippi, neither it nor its employee Nurse Duiett had any legitimate interest in taking fluid samples.

49. Although an ambulance was waiting to take Gates to another hospital in Mississippi for treatment—as the Louisiana Heart Hospital refused to treat him—Nurse Duiett and the defendant deputies would not release him to the drivers of the ambulance until he gave them a urine sample—so that they could check his urine for street drugs.

50. Against his will, but in order to be transported to another hospital which would treat him, Gates was forced to give a urine sample.

51. While he gave the urine sample, Nurse Duiett and the deputies continued to harass him and otherwise threaten him with harm.

52. Despite the fact that he was in medical custody, Nurse Duiett as well as other employees of the Louisiana Heart Hospital allowed deputies to remain in their presence while they discussed Gates and his condition with non-medical personal in certain violation of HIPAA, at  45 C.F.R.164.513 [HIPAA].

53. When Duiett and the other hospital employees gave Gates information as to X-rays and

almost 300 CT Scans it had taken of his head and face, the deputies were given the information at the same time.

54.   When Duiett and the other hospital employees gave Gates the information that he did not have a skull fracture, the deputies appeared relived, and in Gates present, the deputies went around giving each other high-five hand slaps.

55.   At no time did Duiett or the other employees of the Louisiana Heart Hospital attempt to or otherwise secure privacy for Gates while he was in the custody and care of the hospital.  In fact, one of the police detectives in the hospital room advised Gates of his options of going home or to go to Mississippi to seek treatment from a plastic surgeon.

56.   After his initial examination of Gates, Dr. Kerry never returned to the hospital room and never advised Gates's of his medical conditions or options for treatment.

57.   The deputies had complete access to Gates at all times while he was in the hospital, including but not only when the physicians were talking to or meeting with him.

58.   As he was being prepared for transport from the Louisiana Heart Hospital, deputy Gottardi gave Gates two citations: reckless operation and DUI.

59.   There citations were given to him the evening of 16 November 2007, on early in the morning of the next day.

60.   Defendants Gottardi, Williams and others, knowing the extent and extensiveness of the injuries Gottardi had inflicted upon Gates, began and over the course of several months, fabricating facts, affidavits, reports, and charges in order to cover up the injuries they had inflicted on Gates, and to cover up their violation of his constitutional and civil rights.

61.   Subsequently, defendants the Sheriff, his deputies, and his private counsel defendant attorney

-14-

Hughes, threatened and were able to have the District Attorney file new charges of *resisting arrest*—the new charges were filed on the date of trial over ten months after the original charges were filed, only three [3] days after Sheriff's attorney Hughes had spoke with District Attorney Bruce Dearing, who was handling the Gates case.

62.    Defendants the Sheriff, his deputies, and his private counsel defendant attorney Hughes, not only threatened this criminal action in order to obstruct Gates's right to be heard on his constitutional and civil rights claims, Hughes was able in concert and conspiracy with the District Attorney to have the District Attorney file new charges of resisting arrest which was the express and admitted purpose of preventing Gates from redress of his constitutional and civil rights actions in these United States District Court for the Eastern District of Louisiana.

63.    When attorney Abel had met with attorney Hughes to discuss the deputies's constitutional violations and Gates's civil rights claims, Hughes expressly stated that he would call, or would have the Sheriff call the District Attorney and have him file *resisting arrest* charges against Gates, and those charges would prevent Gates's attempt to advance any such constitutional and civil rights action. Hughes specifically noted that the same charges of *resisting arrest* were used to stop the 42 U.S.C. § 1983 claims of a young woman who counsel later discovered was Holly Ray Burns and the resisting arrest charges would have the same effect for any civil rights claims brought by Gates.

64.    This was not the first time that the Sheriff and his deputies fabricated facts, affidavits, and reports, or conspired with the District Attorney to add charges in order to coverup the injuries they inflicted on Gates, or the deputies's violation of his civil and constitutional rights.

65.    Upon information and belief, Louisiana Heart Hospital gave the deputies and other members

of the Sheriff's Office, information about the severity of Gates's injuries, without a warrant and in clear violation of 45 C.F.R.164.513 [HIPAA].

66.     In order to cover up their actions, the Sheriff and his deputies constructed facts and fabricated charges designed to give them leverage against any civil rights or constitutional violations actions Gates might advance.

67.     By this time the deputies had learned from the hospital that Gates worked in the legal profession, managed a law firm, and taught Continuing Legal Education.

68.     Deputies filed affidavits charging Gates with Obstruction of a Highway of Commerce, and again with DUI.  The purpose for charging Gates with the false offenses of obstructing a highway of commerce and driving the wrong way will become evident between now and the time of trial.

69.     Gates appeared for booking on the fabricated charges, was booked, and subsequently arraigned.

70.     Obstruction of a Highway of Commerce is a felony under Louisiana law.

71.     By charging him with a felony, defendants knew they might and intended to gain leverage to obstruct any actions Gates might advance as to his constitutional and civil rights violations.

72.     Subsequently, the District Attorney charged Gates with DUI and another felony instead of Obstruction of a Highway of Commerce.

73.     The District Attorney charged Gates with Aggravated Flight, La. R.S. 108.1.

74.     These charges were accepted and Gates was subsequently arraigned several months after the incident.

75.     Approximately six months after the incident, Assistant District Attorney Gracianette initiated

a demand, stating that the District Attorney would not advance the charges against Gates provided that Gates release the Sheriff and his deputies from liability for their beating and assaulting him.

76.   Civil rights counsel for Gates arranged for and met with counsel for the Sheriff, attorney Charles M. Hughes, to discuss the District Attorney's proposal.

77.   On 24 July 2007 counsel Daniel Abel met with Sheriff's attorney defendant Charles M. Hughes, Jr., at 1:30 PM, at his office in Covington, Louisiana.

78.   During the discussion of the civil rights issues and the extent of Gates's injuries, Sheriff's attorney Hughes threatened to have the District Attorney file *additional charges of Resisting Arrest* against Gates, in order to obstruct any civil rights claims that Gates might file, citing *Heck v. Humphrey* and related cases.

79.   Hughes specifically said that he would call or would have the Sheriff call the District Attorney and have those charges filed.

80.   At the very least, Hughes called the Assistant District Attorney himself.

81.   Hughes spoke with Assistant District Attorney Bruce Dearing on 17 September 2007, the Friday before the trial date.

82.   Only three days later, on the trial date of 20 September 2007, the District Attorney recharged Gates—ten months after the original charges were filed—with *resisting arrest*, the exact charges that had been threatened by defendant Hughes for the express purpose of defeating any civil rights claims that Gates might advance.

83.   These actions of the Sheriff and his deputies in concert and conspiracy with the District Attorney and his assistants, and the Sheriff's private counsel, have not only violated the

-17-

constitutional and civil rights of complainant, the actions of the Sheriff and District Attorney also violated their constitutional mandates and restraints as set forth in the Louisiana Constitution and expressly articulated in *State v. Tate* and its progeny.

84.  On 20 September 2007, the date of the trial—over ten months after the incident, as the express and acknowledged behest of Sheriff's attorney defendant Hughes—the District Attorney filed new charges against Gates for resisting arrest, the exact charges Hughes had threatened.

85.  The matters were reset for trial on 19 October 2007.

86.  Because the District Attorney and his assistants have acted in violation of their mandate under the Louisiana constitution, and *State v. Tate* 171 So. 108, *Perez*, 454 So.2d 806 and *Bush I*, 538 So.2d 606, *Bush II*, 541 So.2d 903, *Monell v. New York City Dept of Social Services,* 436 U.S. 658, *City of Canton v. Harris,* 489 U.S. 387, *McMillian v. Monroe County,* 520 U.S. 781, *Bryan County Comm'r v. Brown,* 520 U.S. 397, *and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.)1999—Gates has filed the appropriate motions to have the defendant District Attorney recused.

On 11 December 2007, the District Court ordered Sheriff's Attorney Hughes and Assistant District Attorney Dearing to testify in the recusal hearing. They opposed the Court's order and have filed a supervisory writ with the Louisiana First Circuit Court of Appeal.

87.  As well, Gates shall ask this United States District Court to enjoin the State Court and the District Attorney from going forward with its bad-faith prosecution.

## COUNT I – § 1983 CAUSES OF ACTION

88.     The Sheriff and his deputy defendants Miller, Gottardi, and Williams, falsely assaulted, battered, detained, and charged plaintiff in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Under color of law, and having made a custodial arrest, defendant deputies did use by definition **excessive force** against Gates such as to inflict serious, permanent injuries upon him and to otherwise violate his federal constitutional and federal civil rights.

89.     These defendants acted in combination and in concert to commit unlawful and unconstitutional acts against plaintiff.  Furthermore, the law under the Fourth, Fifth, Eighth, and Fourteenth Amendments in this regard is clearly established so as to defeat any purported police defendants' qualified immunity for state law claims.

90.     Complainant Gates repeats and re-alleges and incorporates by reference the allegations in paragraphs nos. 17 through 83 above with the same force and effect as if set forth herein.

91.     At all times relevant herein, the conduct of all defendants were subject to 42 U.S.C. § 1983, 1985, 1986, and 1988.

92.     Acting under the color of law, defendants worked a denial of Gates's rights, privileges, and immunities secured by the United States Constitution and by Federal law.

### COUNT II - ENUMERATED § 1983 VIOLATIONS

93.     Complainant Gates repeats and realleges and incorporates by reference the allegations in paragraphs nos. 17 through 83 above with the same force and effect as if set forth herein.

94.     At all times relevant herein, the conduct of all defendants were subject to 42 U.S.C. § 1983, 1985, 1986, and 1988.

95.     Acting under the color of law, defendants worked a denial of Gates's rights, privileges, and

-19-

immunities secured by the United States Constitution and by Federal law, including but not limited to the violations enumerated immediately below.

96.     **VIOLATION OF 42 U.S.C. 1983 - Excessive Use of Force, Assault and Battery**, by defendant sheriff officers under the Sheriff's control, who violated the rights, privileges, and immunities of Gates—as set forth in the facts at paragraphs Nos. 17-83, which deprived Gates of both his liberty without due process of law and his right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments

97.     **VIOLATION OF 42 U.S.C. 1983 - Concerted Unlawful and Malicious Subsequent Arrests and Charges** which deprived Gates of both his liberty without due process of law and his right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments. (Gates reserves his right to pursue this cause of action, if the Court finds that it cannot be heard at this time, in light of the United States Fifth Circuit Court of Appeals opinion in *Holly Ray Burns v. Sheriff Rodney Jack Strain, et al.* [No. 07-30837, 14 January 2008] ).

98.     **VIOLATION OF 42 U.S.C. 1983 -  Concerted Unlawful and Malicious Sequential Detention and Confinement** which deprived Gates of both his liberty without due process of law and his right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments.

99.     **VIOLATION OF 42 U.S.C. 1983 - Sheriff's Refusing or Neglecting to Prevent** defendant sheriff officers under this control, from violating the rights, privileges, and immunities of Gates—as set forth in the facts at paragraphs Nos. 17-83, refusal or neglect in preventing

deprived Gates of both his liberty without due process of law and his right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments.

100. **VIOLATION OF 42 U.S.C. 1983 - Sheriff and District Attorney's Malicious Prosecution**, designed to shield and otherwise coverup the defendant sheriff officers under the Sheriff's control, who violated the rights, privileges, and immunities of Gates—as set forth in the facts at paragraphs Nos. 17-83, which deprived Gates of both his liberty without due process of law and his right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments. (Gates reserves his right to pursue this cause of action, if the Court finds that it cannot be heard at this time, in light of the United States Fifth Circuit Court of Appeals opinion in *Holly Ray Burns v. Sheriff Rodney Jack Strain, et al.* [No. 07-30837, 14 January 2008] ).

101. **VIOLATION OF 42 U.S.C. 1983 - Sheriff and District Attorney's Malicious Abuse of Process**, designed to shield and otherwise coverup the defendant sheriff officers under the Sheriff's control, who violated the rights, privileges, and immunities of Gates—as set forth in the facts at paragraphs Nos. 17-83, which deprived Gates of both his liberty without due process of law and his right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments. (Gates reserves his right to pursue this cause of action, if the Court finds that it cannot be heard at this time, in light of the United States Fifth Circuit Court of Appeals opinion in *Holly Ray Burns v. Sheriff Rodney Jack Strain, et al.* [No. 07-30837, 14 January 2008] ).

**COUNT III – § 1983 CONSPIRACY CAUSE OF ACTION**

102.   All defendants acted in combination and in concert, including Sheriff Jack Strain whose "deliberate indifference in not preventing these acts," combined with the willful acts of his deputies acting in concert and conspiracy with the District Attorney, thereby allowing the commission of these unlawful acts of illegally detaining, arresting, extorting, and violating Gates's various constitutional rights.

103.   As a result of defendants' conspiracy to commit illegal acts against Gates, they are liable to plaintiff per 42 U.S.C. §1983 as well as 42 U.S.C. §1988 for attorneys' fees.


## COUNT IV – § 1983 LIABILITY OF SHERIFF, DEPUTIES, AND HIS OFFICE

104.   St. Tammany Sheriff Strain and his office violated complainant rights as those rights are expressly guaranteed and protected under *Holly Ray Burns v. Sheriff Rodney Jack Strain, et al.* [No. 07-30837, 14 January 2008], *Monell v. New York City Dept of Social Services,* 436 U.S. 658, *City of Canton v. Harris,* 489 U.S. 387, *McMillian v. Monroe County,* 520 U.S. 781, *Bryan County Comm'r v. Brown,* 520 U.S. 397, *and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.) 1999, *State v. Tate* 171 So. 108, *Perez,* 454 So.2d 806, *Bush I,* 538 So.2d 606, and *Bush II,* 541 So.2d  903.

105.   The St. Tammany Sheriff and his office are responsible for the acts and omissions of the employees and are liable for the activities of its agents, who are not employees.

106.   At all times pertinent hereto, the defendants were acting under color of law, statutes, customs, policies, ordinances and usages of the State of Louisiana, the Parish of St. Tammany, and the St. Tammany Sheriff's Office.

107.   At all times pertinent hereto, the St. Tammany Sheriff's Office and/or the Sheriff failed to

adopt sufficient policies to deter or prevent the violating of Gates's civil rights.

108. At all times pertinent hereto, the St. Tammany Sheriff's Office and/or the Sheriff failed to develop and/or maintain a custom or policy to identify, discipline, rehabilitate and/or retrain its police officers who violated Gates's civil rights.

109. At all times pertinent hereto, the St. Tammany Sheriff's Office and/or the Sheriff negligently hired and retained police officers who violated criminal suspects' civil rights.

110. The illegal and unconstitutional policies and procedures of the St. Tammany Sheriff's Office were the driving force of the deprivation of Gates's rights herein.

111. Furthermore, through improper training, improper hiring, negligent retention, ineffective internal policies, ignoring patterns and practices of abuse, Sheriff Rodney Jack Strain and the St. Tammany Sheriff's Office were deliberately indifferent to said policies and procedures leading to Gates's rights being violated.

112. Also, the St. Tammany Sheriff's Office had a policy and procedure of engaging in illegal activities to illegally secure charges—including but not limited to *resisting an officer* or *resisting arrest*—against innocent persons, here in violation of Gates's federal and state rights.

113. As a result of their various violations, these defendants are liable to plaintiff pursuant to 42 U.S.C. §§1983, 1985, 1986, and 1988.

114. At all times pertinent hereto, defendant Rodney Jack Strain was the Sheriff of the St. Tammany Sheriff's Office. Sheriff Jack Strain is responsible for the actions and inactions of his subordinates as they relate to the violations of Gates's civil rights, in the following non-exhaustive particulars:

a.  Failure to properly hire, train, discipline and/or supervise the police officers under his command;

b.  Failure to adopt and enforce reasonably appropriate policies, practices, and procedures for the operation and administration of the internal affairs of the St. Tammany Sheriff's Office;

c.  Condoning a pattern, practice and/or custom of police officer intimidation and abuse, and by failing to take appropriate and reasonable measures to ensure that the members of the general public are protected from unlawful searches, seizures, and extortion by members of the St. Tammany Sheriff's Office;

d.  Failure to adequately investigate and take appropriate disciplinary action for misconduct by members of the St. Tammany Sheriff's Office;

e.  Failing to maintain close supervision, monitoring, and accountability of members of the St. Tammany Sheriff's Office who have violated Louisiana citizens' civil rights;

115.  All of the acts and omissions alleged herein are established customs, policies and practices, which, among others, have the effect of depriving Gates of his right to due process of law, including freedom from unreasonable searches and seizures, as well as other rights, privileges and immunities secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of Louisiana, which directly and proximately caused the damages complained of herein.

116.  At all times pertinent hereto, defendants were acting within the course and scope of their employment with the St. Tammany Sheriff's Office, thereby rendering the St. Tammany Sheriff's Office liable for the acts of said defendants and/or vicarious liability for all causes and claims stated herein.

-24-

117.   As a result of their various violations, these defendants are liable to Gates pursuant to 42 U.S.C. §§1983, 1985, 1986, and 1988.

### COUNT V – LIABILITY OF DISTRICT ATTORNEY AND HIS OFFICE

118.   St. Tammany District Attorney, his assistants, and his office violated complainant rights as those rights are expressly guaranteed and protected under *Monell v. New York City Dept of Social Services,* 436 U.S. 658*, City of Canton v. Harris,* 489 U.S. 387*, McMillian v. Monroe County,* 520 U.S. 781*, Bryan County Comm'r v. Brown,* 520 U.S. 397*, and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.) 1999, and *Holly Ray Burns v. Sheriff Rodney Jack Strain, et al.* [No. 07-30837, 14 January 2008].

119.   St. Tammany District Attorney, his assistants, and his office have violated their mandate as set forth in the 1974 Louisiana Constitution, as articulated expressly in *State v. Tate* 171 So. 108,  *Perez*, 454 So.2d 806, *Bush I*, 538 So.2d 606, and *Bush II*, 541 So.2d  903.

And have violated that mandate as further defined under *Monell v. New York City Dept of Social Services,* 436 U.S. 658*, City of Canton v. Harris,* 489 U.S. 387*, McMillian v. Monroe County,* 520 U.S. 781*, Bryan County Comm'r v. Brown,* 520 U.S. 397*, and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.) 1999, *State v. Tate* 171 So. 108,  *Perez*, 454 So.2d 806, *Bush I*, 538 So.2d 606, and *Bush II*, 541 So.2d  903.

120.   By conspiring with the Sheriff's office to obstruct Mr. Gates's redress of the violations of his constitutional and civil rights, the St. Tammany District Attorney, his assistants, and his office have violated their mandate as set forth in the 1974 Louisiana Constitution, and as articulated—specifically prohibiting a district attorney from being involved or interested in any extrinsic matters, which might consciously or unconsciously impair his power to conduct

an accused's trial impartially. *State v. Tate*, Sup.1936, 185 La. 1006, 171 So. 108.

121.    In violating their constitutional mandate, the St. Tammany District Attorney, his assistants, and his office have also deprived and violated his constitutional and civil rights as set forth in *Monell v. New York City Dept of Social Services,* 436 U.S. 658*, City of Canton v. Harris,* 489 U.S. 387*, McMillian v. Monroe County,* 520 U.S. 781*, Bryan County Comm'r v. Brown,* 520 U.S. 397*, and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.) 1999, *State v. Tate* 171 So. 108,  *Perez*, 454 So.2d 806, *Bush I*, 538 So.2d 606, and *Bush II*, 541 So.2d  903.

## COUNT VI – DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

122.    By illegally and sequentially arresting, falsely charging, and recharging  plaintiff, and denying plaintiff a good faith prosecution, a right to a fair trial, all sheriff-deputies-and-district-attorneys defendants violated Gates's rights to due process and equal protection as set forth by the United States Constitution.

## COUNT VII: VIOLATION OF 45 C.F.R.  HIPPA

123.    At all times relevant herein, the conduct of all defendants were subject to 45 C.F.R. 164.513 [HIPAA].  Complainant does <u>not</u> aver an independent cause of action arising from violation of these federal regulations.  But violation of these regulations do prove defendants' violation of complainant's constitutional and civil rights.

124.    Defendants Louisiana Heart Hospital, Nurse Duiett, and sheriff deputies violated these federal laws, in the following non-exclusive particulars.

125.    Despite the fact that Gates was initially taken to defendant Louisiana Heart Hospital, the physicians there refused to treat him.

126.    Once at the Emergency Room of the Louisiana Heart Hospital, deputies Gottardi, Williams,

and officers John Does Nos. 1-5 continued to assault him and threaten him while he was in the custody and care of the hospital itself.

127. Defendant Nurse Philip Duiett joined the sheriff deputies in threatening and assaulting Gates while he was in the custody and care of the hospital.

128. Defendant Nurse Duiett in the presence of the deputies and others, accused Gates of multiple crimes and offenses and fabricated matters which could only have been suggested to him by the sheriff's deputies.

129. Defendant deputies asked Gates for permission to draw blood and take urine samples from him.

130. Gates refused—the notice of that refusal is in the record of the traffic charges.

131. Defendant Hospital, Nurse Duiett, and deputies asked Gates for permission to treat him and draw blood and take urine for treatment.

132. Gates refused permission.

133. For purposes other than treatment, defendant hospital—and upon information and belief Nurse Duiett himself—took blood samples from Gates.

134. As the hospital and its physicians decided not to treat Gates but to transfer him out of Louisiana for treatment, its taking of blood samples from Gates constitutes a battery;

135. As defendant Nurse Duiett and other employees of the hospital took Gates's blood without his express permission—in fact they took his blood against his express refusal— their actions constitute a battery.

136. Defendant Duiett's actions, in conspiracy with the defendant deputies, constitute assault for the threats and intimidations inflicted upon Gates during his time at the Louisiana Heart

Hospital.

137.   As the treating physicians at Louisiana Heart Hospital decided not to treat Gates, but to transfer him to a hospital in Mississippi, neither it nor its employee Nurse Duiett, had any legitimate interest in taking fluid samples.

138.   Although an ambulance was waiting to take Gates to another hospital in Mississippi for treatment—as the Louisiana Heart Hospital refused to treat him—Nurse Duiett and the defendant deputies would not release him to the drivers of the ambulance until he gave them a urine sample.

139.   Against his will, but in order to be transported to another hospital which would treat him, Gates was forced to give a urine sample.

140.   While he gave the urine sample, Nurse Duiett and the deputies continued to harass him and otherwise threaten him with harm.

141.   Despite the fact that he was in medical custody, Nurse Duiett as well as other employees of the Louisiana Heart Hospital allowed deputies to remain in the room while they discussed Gates and his condition with non-medical personal in certain violation of HIPAA, at  45 C.F.R.164.513 [HIPAA].

142.   When Duiett and the other hospital employees gave Gates information as to X-rays and almost 300 CT Scans it had taken of his head and face, the deputies were given the information at the same time.

143.   When Duiett and the other hospital employees gave Gates the information that he did not have a skull fracture, the deputies appeared relived, and in Gates's present, the deputies went around giving each other high-five hand slaps.

144.    At not time did Duiett or other employees of the Heart Hospital attempt to or otherwise secure privacy for Gates, while he was in their custody and care.

145.    The deputies had complete access to Gates at all times while he was in the hospital, including but not only when the physicians and medical personnel were talking or meeting with him.

## COUNT VIII – STATE LAW CLAIMS

146.    Based on the facts stated above, plaintiff hereby asserts various claims under the Constitution, specifically Article I, Sections 2, 3, 4, 5, and 25, and laws of the State of Louisiana, La. C.C. arts. 2315, *et seq. in pari materia* with Title 14 of the Louisiana Revised Statutes, including the acts of false arrest, false imprisonment, assault, battery and extortion.

147.    Based on the facts stated above, Co-defendants did knowingly and intentionally, or in the alternative negligently, violate Gates's rights under the Louisiana Constitution, particularly Art. 1 §§2 (due process of law), 3 (right to individual dignity), 5 (right to privacy), 19 (right to judicial review), 20 (right to human treatment), and 22 (access to courts); and under the laws of the State of Louisiana, including but not limited to LSA-R.S. 14:33, *et seq.* (battery), LSA-R.S. 14:36, *et seq.* (assault), LSA-R.S. 14:40, *et seq.* (intimidating by officers), LSA-R.S. 14:44, *et seq.* (kidnapping), LSA-R.S. 14:46 (false imprisonment), LSA-R.S. 14:66 (extortion), LSA-C.C. art. 2315 (liability for acts causing damages), LSA-C.C. art. 2316 (negligence, imprudence or want of skill), LSA-C.C. art. 2317 (acts of others), LSA-C.C. art. 2320 (acts of servants), and LSA-C.C. art. 2324 (solidary liability for conspiracy), (abuse of process and negligent misinformation); Malicious prosecution and prosecutorial misconduct are reserved.

148.    These non-exclusive Louisiana state law deprivations render defendants liable to plaintiff

jointly and severally, or *in solido*, for full compensatory damages, including general damages, special damages, cost of this action, and legal interest.

149.    The facts underlying defendants' violations of Gates's rights are distinct and separate from any facts underlying the various charges created, made, altered—and almost one year after the incident, newly charged against Gates—such that they can coexist with any fact-based aspect of any element of any charge which has been created, made, and now advanced by the defendants Sheriff and District Attorney.

## DAMAGES

150.    Complainant seeks damages against the defendants pursuant to 42 U.S.C. § 1983, 1985, 1986, for unlawful arrest, excessive force, extortion and other violations of his civil right as more fully set forth above.

151.    Pursuant to this court's supplemental jurisdiction, he seeks damages against the defendants under Louisiana state law for false arrest, battery, extortion, and other illegal acts as more fully set forth above.  He also seeks punitive damages under 42 U.S.C. § 1983, 1985, 1986, and attorneys' fees under 42 U.S.C. §1888.

## DEMAND FOR TRIAL BY JURY

Complainant prays for a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing, plaintiff requests the following relief:

a.    Compensatory damages for all physical and emotional injuries, and the treatment of those injuries caused by defendants, in favor of plaintiff in amounts appropriate under the facts and law;

-30-

b.      Punitive damages from the individual defendants, jointly and severally, for malicious, willful and wanton actions done in reckless disregard for plaintiff's rights as set forth above in amounts appropriate under the facts and law;

c.      Pre-judgment and post-judgment interest;

d.      All costs of these proceedings;

e.      Reasonable attorneys' fees as allowed 42 U.S.C. §1988;

f.      Injunctive relief for bad-faith prosecution; and

g.      All other just and equitable relief to which the plaintiff is entitled.

```
Respectfully submitted,
/s/ Daniel G. Abel
DANIEL G. ABEL (LSBA No. 8348)
Trial Attorney
Telephone:   504.782.0613
Facsimile: 504.273.0247
danielpatrickegan@gmail.com
```

## Certification of Summons and Service

I have prepared the appropriate request for summons, and retained private service who has begun to locate and serve the named defendants. This pleading and all attachments have been e-filed with the Clerk of the United States District Court for the Eastern District of Louisiana this 22 January 2008.

/s/ Daniel G. Abel