UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHANE M. GATES                                                              CIVIL ACTION

VERSUS                                                                      NO. 07-6983

SHERIFF RODNEY JACK STRAIN, ET AL.                                          SECTION "K"(2)

ORDER AND REASONS

Before the Court is a "Motion to Re-Open 42 U.S.C. § 1983 Action and Stay Unconstitutional Prosecution in the 22nd Judicial District Court for the Parish of St. Tammany." (Doc. 84). Having held oral argument on May 11, 2011, and having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court finds for the reasons to follow, that the motion must be denied.

**Background**

Shane M. Gates ("Gates") was arrested on November 16, 2006, for (1) obstruction of a highway, (2) driving while intoxicated[1]; (3) having an open container; (4) reckless operation and (5) resisting arrest. The circumstances surrounding the arrest are hotly contested and form the basis for this § 1983 suit because he contends that he was wrongfully and brutally beaten in and around the face by sheriff deputies at that time. Gates has sued a litany of defendants, including Sheriff Rodney Jack Strain ("Strain") in his official and individual capacity; the St. Tammany Parish Sheriff's Office; District Attorney Walter P. Reed in his official capacity; St. Tammany District Attorney's Office; Attorney Charles M. Hughes, Jr.; Sheriff Deputy Nathan Miller; Sheriff Deputy Roger Gottardi; and Sheriff Deputy Brian Williams.

---

[1] A .28 blood alcohol level reading was obtained which plaintiff maintains is inaccurate and wrongfully procured..

The circumstances surrounding this arrest are outlined in plaintiff's Complaint for Damages (Doc. 3). Gates alleges there that he left a car dealership in Slidell, Louisiana and was on Interstate Highway 12 returning home to Covington, when he noticed a police car coming up behind him. He pulled over to the shoulder and stopped his car. He claims to have gotten out of the car and was thrown on the hood by St. Tammany Parish Sheriff Deputy Nathan Miller ("Miller"). Plaintiff contends that because the hood was hot, he backed off of it, causing the Miller to pepper spray him. Gates claims he was then handcuffed which apparently were not removed in the ensuing fracas. Defendants Sheriff Deputy Roger Gottardi ("Gottardi") and Sheriff Deputy Brian Williams ("Williams") then arrived on the scene, and Gates contends that Gottardi forced Gates' head, face and torso onto the hood of the running police car. Gates then pulled back again to get off the hood of the hot car. Gottardi then threw Gates on the I-12 and pounded his face into the roadway until he was unconscious.

Gates contends that he then awoke in the Emergency Room at the Louisiana Heart Hospital. Dr. Bruce Kerry, the ER doctor noted extensive lacerations to the eye and hematomas caused by a direct blow which eye injury required 27 stitches. There were other face and neck injuries, mouth and swelling generally. The circumstances surrounding the blood alcohol test which resulted in the .28 reading are contested as well and apparently occurred while at the Louisiana Heart Hospital. Eventually, he taken by ambulance to a Mississippi hospital for treatment.

Gates maintains that the deputies then took a course of action over several months to fabricate a cover up of the injuries they had inflicted on Gates. Gates alleges that Hughes, attorney for the Sheriff's Office and the deputies involved, threatened and was able to have the

District Attorney file new charges of **resisting arrest** on the eve of trial which potentially could defeat the challenged civil rights claim.  Gates contends that an offer was made for there to be a settlement and release of the § 1983 claim for $10,000. (Rec. Doc. 84-2 at 8, Transcript of Proceedings, May 10, 2010).   In response, Charles M. Hughes, Jr. ("Hughs"), the Sheriff's attorney, maintains that Gates' attorney was trying to blackmail the Sheriff's office into dropping the criminal charges by virtue of the amount of damages alleged and that  Hughes had never made any settlement offer to Abel. (Rec. Doc. 84-2 at 85 Transcript of Proceedings, May 10, 2010).  Nonetheless, in  Hughes' closing testimony at that hearing, he admitted to the possibility of a hold harmless agreement having been discussed between him and the Assistant District Attorney Gracianette. Hughes posited that it would have been Gracianette who would not have agreed to a reduction of the charges without a hold harmless clause.  Hughes further admitted that in this discussion Mr. Gates' demand for money  was a consideration.  Thus, Gates contends that Hughes actively participated in having the resisting arrest charge added.

Based on this testimony and these actions, Gates alleges that these actions taken together constitute violations of the Hobbes Act[2] in that the defendants sought to extort out of Gates the relinquishment of his claims against the St. Tammany defendants in exchange for his abandoning his constitutional rights under § 1983.  He maintains that he does not seek or base his civil claims on the Hobbs Act, but that it is proof that the federal court must step in to prevent further violation of Gates' constitutional rights and enjoin the criminal prosecution.  This contention turns on the fact that Gates was initially charged by the St. Tammany District Attorney's Office

---

[2]Hobbs Act, 18 U.S.C. § 1951 "imposes criminal sanctions on those who affect interstate commerce by extortion.  *See* 18 U.S.C. § 1951(a).  Extortion is defined as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" *Id.* § 1951(b)(2)."  *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002).

**only** with aggravated flight (felony) and DUI (which can be enhanced to a felony) and only after the actions outlined above, ten months later, on the eve of trial and after a civil suit was threatened by Gates' attorney ( who is also his step-father), a new bill of information issued which then included resisting arrest which under the jurisprudence of *Heck v. Humphrey*, 512 U.S. 477 (1994)[3] and its progeny might act as a complete bar to plaintiff's § 1983 claim if these injuries were the direct result of his having resisted the arrest.

      As such, Gates has moved this Court to enjoin the state criminal proceeding claiming that these facts underscore the unconstitutionality of the anticipated trial.  As further "proof", Gates contends that there is evidence of Hughes and St. Tammany Judge Badeaux having ex parte discussions about criminal prosecutions. He points to the fact that Hughes had something to do with the sheriff deputies sending a letter complaining of their victimization in the subject arrest. Gates contends that dispatch tapes, transcripts, and medical records have been altered and destroyed.  One assistant district attorney has refused to identify two officers who are named by number on the dispatch tapes and transcript as being at the scene of the arrest.  In addition Assistant District Attorney for St. Tammany Parish Julie Knight is the wife of one of the officers involved in the arrest and worked on the case for five years and is alleged to be behind the fabrication of evidence in the matter.  Based on the foregoing, the Court will now analyze whether there is a legal basis for the relief requested.

---

[3]*Heck* stands for the proposition:
that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which has was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invoalid by a state tribunal authorized to make such determination or called into question by a federal curt's issuance of a writ of habeas corpus.'" *Bush v.* Strain, 513 F.3d 492, 497 (5th Cir. 2008) citing *Heck,* 512 U.S. at 486-87

**ANALYSIS**

**I.      THE ANTI-INJUNCTION ACT, *YOUNGER* AND *SHAW***

The Anti-Injunction Act, 28 U.S.C. § 2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aide of its jurisdiction, or to protect or effectuate its judgments." This statute recognizes the need for comity in a federal system "giving consideration to the sovereign status of separate state governments." *Hobbes v. Thompson,* 448 F.2d 456, 463 (5th Cir. 1971).  An express exception to the anti-injunction statute is found the civil rights statute  42 U.S.C. § 1983.  *Mitchum v. Foster*, 407 U.S. 225, 242 (1972); *Shaw v. Garrison*, 467 F.2d 113, 114 (5th Cir. 1972).  "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights–to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'"*Mitchum*, 704 U.S. at 242 citing *Ex Parte Commonwealth of Virginia*, 100 U.S. 339, 346 (1879).  However, that exception is not absolute; criteria have been established for exercising that exception.

The contours of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances placed upon its use were elucidated in *Younger v. Harris* , 401 U.S. 37 (1971) and its companion cases.  *Shaw*, 467 F.2d at 119.  As the Fifth Circuit, reviewing these cases, noted:

> *Younger* and its accompanying opinions, while significant, do not represent startling new doctrines with respect to the proper role of federal court in our system of federalism. . . .
> The opinion does not purport to extend beyond this traditional realm of comity and require across-the-board abdication of federal decision-making power in all manner of cases.

*Hobbes*, 448 F.2d at 465. Thus, the Supreme Court "stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecution, even irreparable injury is insufficient unless it is 'both great and immediate.'" *Shaw*, 467 F.2d at 119 citing *Younger*, 401 U.S. at 46.

The Supreme Court in *Younger* continued:

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must **be one that cannot be eliminated by his defense against a single criminal prosecution**. *See, e.g., Ex parte Young*, [209 U.S. 123, 145-47 (1908).

*Id.* (emphasis added).

Furthermore, the Fifth Circuit then made clear that a showing of bad faith prosecution or prosecution for the purpose of harassment "is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in *Younger*, because there is a federal right to be free from bad faith prosecutions. Irreparable injury need not be independently established." In such an instance, the irreparable injury is not merely inferred, for purposes of *Younger,* it is conclusively shown by a showing of bad faith or harassment. *Shaw*, 467 F.2d at 120 (emphasis added). Thus, it is fair to state that where state prosecution is instituted by state officials in good faith, injunctive relief is not available unless irreparable injury to the state court defendant is shown. However, "should the state court defendant be able to establish that the state prosecution has been instituted **in bad faith and for purposes of harassment", irreparable injury need**

**not be** shown provided there is a basis for federal jurisdiction. *Shaw*, 467 F.2d 121, n. 10 (emphasis added).

The threshold for a finding of sufficient irreparable injury based on bad faith and harassment is significant as the facts in *Shaw* demonstrate. There, District Attorney Jim Garrison had prosecuted Clay Shaw for conspiracy in the death of President Kennedy on extremely weak evidence culminating with Garrison's "star" witness taking the Fifth on the stand, a circumstance that the Fifth Circuit found within the realm of Garrison's knowledge. Furthermore, other misdeeds outlined in detail in the opinion occurred during the initial trial.

Shaw eventually took the stand in his own defense maintaining that he did not commit the crime. After a forty-day trial, Shaw was acquitted in fifty-five minutes of deliberation. The next working day, Garrison signed an information charging Shaw with the crime of perjury. Given the facts and circumstances of such a witch hunt, the Fifth Circuit affirmed the district court's enjoining Garrison from further prosecution of the case and found that the perjury charge were brought in bad faith and for purposes of harassment.

The facts in the instant case do not meet such a threshold. In the case at bar, the gravamen of plaintiff's claims is that of prosecutorial bad faith–the late addition of a resisting arrest charge on the eve of trial to potentially bar Gates' §1983 claim as well as allegations that the evidence surrounding the charges has been manufactured and altered. All of these "facts" clearly can be presented in Gates' defense and will speak directly to a jury's decision as to guilt or innocence on the charges brought. In addition, Gates' contention that the Hobbs Act violations (the alleged "extortion" of forcing Gates to settle for $10,000 with a full release in

order for the charges to be dropped) is proof of bad faith necessary to enjoin the prosecution of the crimes with which Gates is charged, is simply not correct.

Relying on the United States Supreme Court decision in *Newton v. Rumery*, 480 U.S. 386 (1987), the court in *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp.2d 344 (D. Mass. 2002), wrote:

> The United States Supreme Court has held that a prosecutor may appropriately negotiate an agreement whereby criminal charges are dropped in exchange for a release of § 1983 claims against the city and municipal officials. As the Court held in *Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), upholding a "release-dismissal agreement" in light of a claim that was inherently coercive, "[i]n many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id.* at 394. As to the prosecutor's motivation, the Court refused to assume that a prosecutor would bring frivolous charges or dismiss meritorious charges. *Id.* at 396. Rather, the Court noted that a release of claims could serve the public interest of not having to devote time and resources to the defense of litigation. Id. at 395. Moreover the Court recognized that prosecutors must make difficult decisions in deciding who and when to prosecute, and that judicial deference to such prosecutorial decisions is warranted. . . **Since the Supreme Court has found that such release-dismissal agreements are not *per se* improper, much less unconstitutional, the offer of such an agreement cannot possibly be construed as unconstitutional. Therefore, Grant cannot base his § 1983 claim on the alleged offer to drop the criminal complaint in exchange for a civil release.**

*Grant*, 183 F. Supp. 2d at 360 (emphasis added).

Likewise, in *Jeannite v. City of Haverhill,* 2006 WL 1806410 (D. Mass. June 30, 2006), a former police chief offered to ask District Attorney's office to dismiss charges against plaintiff and place him in a diversion program, if plaintiff promised not to bring a civil rights claim against the City. Plaintiff's attorney refused the offer and used this a the basis for a charge of unconstitutional coercion. The district court there relying on the language noted above in

*Newton* and *Grant*, rejected plaintiff's claim, stating "The same logic applies to this case, in which an offer was made and never accepted." *Id.* at *3.

Thus, there is not enough evidence of "bad faith" present such that this district court can invoke its power under the express exception to the Anti-Injunction Act carved out by § 1983 as explained in *Mitchum*. The resisting arrest charge was issued from the very beginning; it was not manufactured like the perjury charge in *Shaw*. The resisting arrest charge was initially not "accepted" by the District Attorney's office allegedly because it is a misdemeanor charge. With the inclusion of the aggravated flight charge which is a felony and DUI, which can be enhanced to a felony, the District Attorney contends that he simply chose not to charge that crime initially. It is clear that Hughes (the attorney for the Sheriff's Office) brought up the fact that the resisting arrest charge should not be ignored and instigated the writing of a "victim letter" by the deputy sheriffs which culminated in a new Bill of Information. However, the underlying charge was not manufactured from whole cloth and may not be unfounded. That decision awaits a trial. What cannot be gainsaid is that Gates had received a citation for "Resisting an Officer" by Gottardi. Clearly, as noted, the issues raised by plaintiff surrounding the arrest and alleged manufacturing of evidence can be addressed in the context of a defense to the criminal charges at a trial on the merits.

At oral argument, a suggestion was made that at a minimum, the stay that is in place with respect to this case should be lifted and that this matter should be allowed to proceed to trial without waiting for a decision on the underlying criminal charges as is the normal course. However, pretermitting the issue of government officials' absolute or qualified immunited as a threshold issue, the Court finds that lifting the stay in this matter would create an impossible

imbalance with respect to discovery. Clearly, while the criminal matter is pending, Gates would be able to engage in discovery as to all the defendants but would have the right to invoke his Fifth Amendment right in discovery addressed to him. This course of action is untenable. Accordingly,

**IT IS ORDERED** that the "Motion to Re-Open 42 U.S.C. § 1983 Action and Stay Unconstitutional Prosecution in the 22nd Judicial District Court for the Parish of St. Tammany." (Doc. 84) is **DENIED**.

New Orleans, Louisiana, this 11th day of July, 2011.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**